UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JASON BEAUHARNOIS,

                              Petitioner,

        v.                                              9:12-CV-1283 (FJS/ATB)


PAUL CHAPPIUS,

                              Respondent.

_____

JASON BEAUHARNOIS, Petitioner Pro Se
PAUL B. LYONS, Ass't Att'y Gen., for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

Petitioner, incarcerated at Elmira Facility, filed the instant habeas corpus

petition, pursuant to 28 U.S.C. § 2254, on August 15, 2012.  This matter was referred

for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior

U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner was convicted, following a March 2008 jury trial in Supreme Court,

Clinton County, New York, of Sexual Abuse in the First Degree (New York Penal

Law ("Penal Law") § 130.65(3)); Course of Sexual Conduct Against a Child in the

First Degree (Penal Law § 130.75(1)(b)); Predatory Sexual Assault Against a Child

(Penal Law § 130.96); and Endangering the Welfare of a Child (Penal Law §

260.10(1)).  Petitioner challenges the judgment of conviction, entered on April 28,

2008, sentencing him to an aggregate prison term of 32 years to life, followed by 20

years of post-release supervision. On June 16, 2009, the Appellate Division, Third

Department, unanimously vacated petitioner's conviction of first-degree Course of Sexual Conduct Against a Child and affirmed the judgment of conviction as modified, which reduced the term of post-release supervision to ten years.  On October 26, 2009, the New York Court of Appeals denied leave to appeal.  *People v. Beauharnois*, 64 A.D.3d 996,  882 N.Y.S.2d 589 (3rd Dept.), *lv. denied*, 13 N.Y.3d 834, 890 N.Y.S.2d 450 (2009).

## I.    Relevant Facts and Procedural History

Respondent's Memorandum of Law (at 2-21, Dkt. No. 13) and petitioner's Reply (at 2-18, Dkt. No. 22-1) both provide detailed recitations of the factual background and procedural history of the instant habeas action.  This court will provide a brief overview of this background here, elaborating on the details below, to the extent pertinent to the analysis of the claims raised in the petition.

### A.    The Investigation and Filing of Criminal Charges

In late May of 2007, just prior to his twelfth birthday, petitioner's stepson told a fellow student that he did not like Thursdays because, on that day, petitioner would touch him in a way he disliked.  (Trial Transcript ("TT.") 693 (Ward)).[1]  Following this disclosure, the minor victim met, over the course of several days, with Natalie J. Ward, a school social worker; Carrie Carpenter, a Clinton County Department of Social Services ("DSS") caseworker; a police officer; and family pediatrician, Dr. Clark J. Knutson, who also examined the victim.  (TT. 693-94, 702-03, 705-710

---

[1] The transcript of the March 2008 trial of petitioner is part of the record at Dkt. Nos. 15-1 and 15-2.

(Ward); 742-59 (Carpenter); 808-823 (Dr. Knutson)).  The minor victim first told his interviewers that petitioner had touched his genitals on a few occasions in the past; but he later stated that petitioner had been anally sodomizing him on a weekly basis for more than a year.  (*Id.*).

In July of 2007, petitioner was arrested on two counts of sexual conduct against a child in the first degree, and attorney Daniel G. Gaudreau was assigned to represent him in Beekmantown, New York town court.  (Appellant's Brief, Ex. A, Dkt. No. 14 at 7;[2] Hearing Transcript ("HT.") 37).[3]  Following unsuccessful plea negotiations with the District Attorney's Office, petitioner was indicted, on December 10, 2007, on the more extensive charges set forth above.  (Appellant's Brief, Dkt. No. 14 at 5, 7-8).

## B.     The Trial

On March 10, 2008, the parties proceeded to trial before Acting Supreme Court Justice Timothy J. Lawliss and a jury.  The minor victim, then age twelve, testified for the People.  He recounted a detailed history of the sexual abuse he suffered–starting with petitioner's touching of his genitals, at age seven, and progressing to weekly anal sodomy, which began when the victim was between ten and eleven years old.  (TT. 512-29, 531-58).  Defense counsel's cross-examination reflected his strategy of

---

[2] Where a page number herein immediately follows the docket number of a cited document from the record, that page number refers to page number placed in the electronic header of the document by the court's CM-ECF case management/docketing system.  Where a page number immediately follows the title of a document cited, or the exhibit letter assigned to that document by the party who assembled the record in this case, the page number refers to the original, internal pagination of that document.

[3] The transcript of the February 6, 2012 evidentiary hearing, relating to petitioner's motion under N.Y. Crim. Proc. Law § 440.10, is part of the record at Dkt. No. 15.

suggesting that the victim fabricated the claims of abuse because he resented that his stepfather disciplined him, and that the victim's testimony was improperly influenced by the authorities who interviewed him. (TT. 488-92 (Defense Opening); 571, 576, 587, 588-92 (Victim Cross). Attorney Gaudreau's questioning focused on the considerable inconsistencies in the victim's trial testimony and his various prior statements. (TT. 572-75, 577-86, 607-10 ). As the petitioner's brief on direct appeal succinctly summarized, the victim's testimony regarding what he previously said to the authorities about the alleged abuse was clearly inaccurate in many respects. (Appellant's Brief, Dkt. No. 14  Dkt. No. 14 at 30-34).

The victim's grandfather, Thomas G. Stuart also testified for the People about the circumstances under which the petitioner was periodically home alone with his stepson after school. Mr. Stuart also described changes in the victim's behavior and demeanor during the period of time he was allegedly being sodomized, including a recurring problem with soiling his pants. (TT. 631-37, 639-51). School social worker Ward and DSS caseworker Carpenter testified, *inter alia*, about their interviews of the victim regarding the alleged abuse, and defense counsel cross-examined them extensively about inconsistencies in the victim's prior statements and trial testimony. (TT. 693-94, 702-11 (Ward Direct); 726-32 (Ward Cross); 745-59 (Carpenter Direct; 768-87 (Carpenter Cross).[4] Dr. Knutson testified for the People about his interview

_____

[4] Despite hearsay objections by defense counsel, the trial judge allowed these witnesses to testify about their prior interviews of the victim, subject to a limiting instruction, because the defense had clearly taken the position that the victim was fabricating his claims of abuse and that the authorities had improperly influenced the victim's reconstruction of events. (TT. 695-701, 709, 749-50).

and examination of the victim, and provided an expert opinion that damage to the victim's anus was caused by involuntary anal intercourse. (TT. 808-825).

The defense called two witness–the petitioner's mother and the victim's mother, who was also petitioner's wife. (TT. 878-995). The victim's mother testified that she never suspected her husband of abuse, and that she could not recall a time when he would have been home alone with her son or in her son's bedroom. (TT. 908, 910-11, 919-20). Both defense witnesses testified that the victim had a long history of chronic constipation and fecal soiling of his pants, which defense counsel offered to rebut Dr. Knutson's opinion that the victim's anus had been damaged by penile penetration. (TT. 1026-28, 1032-33, 1036-37). Although the defendant initially intended to testify at trial, he did not do so. (TT. 493, 996-97).

### C. Post-Trial Proceedings

As noted above, petitioner was sentenced to a total of 32 years imprisonment. With the assistance of new counsel, petitioner filed a direct appeal (Ex. A, Dkt. No. 14), which resulted in the dismissal of one charge and a reduction in the term of his post-release supervision.

On December 21, 2010, petitioner filed a pro se application for a writ of error coram nobis in the Appellate Division, arguing that his appellate counsel's representation was deficient because he did not argue that his trial counsel was ineffective for failing to consult with an independent medical expert to counter Dr. Knutson's testimony. (Ex. G, Dkt. No. 14-11). On January 28, 2011, the Appellate Division summarily denied petitioner's motion. (Ex. J, Dkt. No. 14-17). On July 12,

2011, the Court of Appeals denied leave to appeal. (Ex. N, Dkt. No. 14-22).

On July 15, 2011, petitioner moved pro se to vacate the judgment of conviction under N.Y. Crim. Proc. Law § 440.10, claiming that defense counsel's representation at trial was constitutionally deficient in a number of specified ways. (Ex. O, Dkt. No. 14-23). Petitioner was permitted to amend his motion to add several other specifications of alleged ineffective assistance of trial counsel. (Ex. Q, Dkt. No. 14-25; Ex. W, Dkt. No. 14-31). The trial judge conducted an evidentiary hearing at which the petitioner, represented by a new attorney, and petitioner's former trial counsel both testified (Dkt. No. 15). The state court ultimately found that petitioner failed to sustain any of his claims of ineffective assistance. (Ex. X, Dkt. No. 14-32; Ex. Y, Dkt. No. 14-33). On July 16, 2012, the Appellate Division denied petitioner leave to appeal the trial court's denial of his Section 440.10 motion. (Ex. CC, Dkt. No. 14-4). Petitioner also filed a motion to renew his Section 440.10 motion (Ex. DD, Dkt. No. 14-6), which was denied on June 4, 2012 (Ex. FF, Dkt. No. 14-10). The Appellate Division denied petitioner leave to appeal the trial court's denial of his renewal motion on September 4, 2012. (Ex. II, Dkt. No. 14-16).

### D.    The Federal Habeas Petition

In his pro se habeas petition dated August 3, 2012 (Dkt. No. 1), petitioner raises the following grounds for habeas relief: (1) his defense attorney provided ineffective assistance, in various specified ways, in connection with the plea bargaining process and at trial; (2) appellate counsel's representation was deficient because he did not argue, on direct appeal, that trial counsel was ineffective in confronting the expert

testimony of Dr. Knutson; (3) the jury was improperly selected because it included a juror who concealed his criminal history, touted his experience as a former police officer, and failed to state unequivocally that he would be impartial; (4) the sentence was harsh and excessive; and (5) the petitioner was never notified of his right to testify before the grand jury or move to dismiss the indictment based on the violation of his grand jury rights.  For the reason set forth below, this court concludes that none of these claims has merit and recommends that the petition be denied and dismissed.

## II.  Generally Applicable Law

### A.  The AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, when a state court has adjudicated the merits of a petitioner's claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).  This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388, 1398 (2011) (citations omitted).

A state-court decision is "contrary to" clearly established federal law if the state

court's conclusion on a question of law is "opposite" to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *Id*.

Under the AEDPA, a summary disposition by a state court constitutes a disposition "on the merits." *Harrington v. Richter*, 562 U.S.__, __, 131 S. Ct. 770, 784- 85 (2011); *see also Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (noting that where state courts summarily deny relief on the merits, "we must focus on the ultimate decisions of those courts, rather than on the courts' reasoning"). A federal court reviewing a Section 2254 claim must determine "what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 131 S. Ct. at 786.

A state court's factual findings are presumed correct under the AEDPA, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo.*

8

*Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

**B.    Exhaustion**

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1).  The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim.  *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).  "A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

**C.    Procedural Bar**

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977).  A federal habeas

9

court generally will not consider a federal issue in a case if a state court decision

"'rests on a state law ground that is independent of the federal question and adequate

to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007)

(quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added).  This rule

applies whether the independent state law ground is substantive or procedural.  *Id.*

There are certain situations in which the state law ground will not be considered

"adequate":  (1) where failure to consider a prisoner's claims will result in a

"fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750

(1991); (2) where the state procedural rule was not "'firmly established and regularly

followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466

U.S. 341, 348-349 (1984); or (3) where the prisoner had "cause" for not following the

state procedural rule and was "prejudice[d]" by not having done so, *Wainwright v.

Sykes*, 433 U.S. at 87.  In *Garvey v. Duncan*, the Second Circuit stated that, in certain

limited circumstances, even firmly established and regularly followed rules will not

prevent federal habeas review if the application of that rule in a particular case would

be considered "exorbitant."   *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v.

Kemna*, 534 U.S. at 376).

A state prisoner who has procedurally defaulted on a federal claim in state court

may only obtain federal habeas review of that claim if he can show **both** cause for the

default and actual prejudice resulting from the alleged violation of federal law, or if he

can show that he is "actually innocent."  *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir.

2008) (internal quotation and citations omitted).  "Cause" exists if "the prisoner can

show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

To demonstrate "actual innocence," a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him, but for the alleged constitutional violation. *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007), *cert. denied sub nom. Murden v. Ercole*, 552 U.S. 1150 (2008); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "Actual innocence" requires not legal innocence, but factual innocence. *Murden v. Artuz*, 497 F.3d at 194. A claim of actual innocence requires petitioner to put forth new, reliable evidence that was not presented at trial. *Cabezudo v. Fischer*, 05-CV-3168, 2009 WL 4723743, at *13 (E.D.N.Y. Dec. 1, 2009) (citing *Lucidore v. N.Y.S. Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000)); *Schlup v. Delo*, 513 U.S. at 316, 327-328.

### D.    Reaching the Merits of Unexhausted Claims

The habeas statute provides that a petition may be denied on the merits, notwithstanding the failure to exhaust state court remedies, assuming there is no procedural bar. 28 U.S.C. § 2254(b)(2). In the absence of specific guidance from the Second Circuit, lower courts in this circuit have applied two standards to determine whether a claim should be dismissed on the merits, notwithstanding the failure to exhaust. *See Hernandez v. Conway*, 485 F. Supp. 2d at 273 n.1. A majority of lower

courts use a "patently frivolous" standard, while others use a "non-meritorious" standard, dismissing a claim when it is "perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Id.* (collecting cases).[5]

## III.    **Effectiveness of Trial Counsel**

The petitioner claims that trial counsel provided ineffective assistance by failing to: (1) properly advise petitioner during plea negotiations; (2) challenge for cause a particular juror who purportedly withheld his criminal record during voir dire; (3) inform the court that jurors were sleeping, not paying attention, or acting erratically; (4) adequately prepare to refute Dr. Knutson's expert testimony; (5) argue that the People committed a *Brady/Rosario* violation regarding certain school records of the minor victim; (6) properly cross-examine two of the People's witnesses; and (7) advise petitioner as to the benefits and risks of testifying at trial. (Pet., Dkt. No. 1 at 5-8).[6]

---

[5] In finding that a "non-meritorious" standard was more appropriate, one court referenced Justice Steven's concurrence in the Supreme Court decision in *Duncan v. Walker*. *Basnight v. Keane*, No. 99-CV-5907, 2001 WL 901139, at *5 n. 1 (E.D.N.Y. July 31, 2001). Justice Stevens stated that "the AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims." *Duncan v. Walker*, 533 U.S. 167, 183 (2001) (emphasis added).

[6] The respondent broadly interprets the instant petition to include other specific instances of ineffective representation by defense counsel, most of which petitioner raised in connection with his Section 440.10 motion: counsel's failure to (a) advise petitioner of his right to be present at the grand jury; (b) inform the People when he was no longer representing petitioner; (c) to provide petitioner's appellate counsel with documentation from the period during which he ceased his representation of petitioner; (d) advise petitioner that he could move to dismiss the indictment on the ground that the People failed to provide notice of his right to testify in the grand jury; and (e) move to dismiss the indictment on this basis. (Resp't's Mem. of Law at 11-12, 21; Ex. Q, Dkt. No. 14-25). Petitioner's pro se legal papers in this and prior related proceedings reflect his obvious proficiency in representing himself. Given that, and the clear way in which the instant petition articulates the various claims, this court concludes that petitioner made a tactical decision to omit certain claims of ineffective assistance or to recast them as due process claims. (Pet., Dkt. No. 1 at 5-8, 12). Even if petition had claimed that trial attorney was ineffective in the additional ways set forth above, those claims should be denied on

Notwithstanding the respondent's arguments, the court concludes that petitioner properly exhausted these federal constitutional claims in state court. The court finds that one minor aspect of these claims is procedurally barred,[7] and that petitioner has failed to establish that the state courts' rejection of these ineffective-assistance claims on the merits involved an unreasonable application of clearly established Federal law,

the merits for the reasons stated in respondent's memorandum of law (at 53-54). The petitioner failed to rebut, by clear and convincing evidence, the factual findings of the state court in rejecting these claims, and the state court otherwise did not unreasonably apply applicable Supreme Court precedent in concluding trial counsel was not ineffective in these respects.

[7] In connection with his Section 440.10 motion, petitioner claimed that his trial counsel was ineffective for not challenging a juror (Tobrocke) because, *inter alia*, he purportedly failed to state unequivocally that he could be fair and impartial during voir dire. (Ex. O, Dkt. No. 14-23 at 17-18). The Acting Supreme Court Justice denied all ineffective assistance claims involving the selection of this juror on the merits. In the alternative, the state court judge found that the claim based on the juror's statements during voir dire was procedurally barred because there was an adequate record to raise this issue on direct appeal, which petitioner failed to do. (11/17/2011 Dec. & Order at 4, Ex. X, Dkt. No. 14-32) (citing N.Y. Crim. Proc. Law § 440.10(2)(c)). The Second Circuit in *Holland v. Irvin*, 45 F. App'x at 17, 20-21 (2d Cir. 2002), concluded that New York courts uniformly apply section 440.10 to bar ineffective assistance of trial counsel claims that are based on the trial record where, as here, the petitioner has an appellate lawyer other than his trial attorney, and fails to raise the claim on appeal. Under New York law, "it is well-settled . . . that where the record is sufficient to allow appellate review of a claim, the failure to raise that claim on direct appeal precludes subsequent collateral review of that claim." *Louis v. Fischer*, 04-CV-2887, 2007 WL 4198255, at *21 (S.D.N.Y. June 25, 2007) (citation omitted); *Brown v. Perlman*, 07 Civ. 8672, 2008 WL 2009220, at *28 n.56 (S.D.N.Y. May 8, 2008) (collecting cases). Where an ineffective assistance claim is record-based, federal habeas courts have found this procedural bar (based on C.P.L. § 440.10(2)(c)) to be "firmly established and regularly followed," and thus "adequate." *See, e.g., Alston v. Donnelly*, 461 F. Supp. 2d 112, 123-24 (W.D.N.Y. 2006)*; Sweet v. Bennett*, 353 F3d 135, 139-40 (2d Cir. 2003). The application of section 440.10(2)(c) in the circumstances of this case would also satisfy the three *Cotto* factors and, would therefore, not be "exorbitant." *See, e.g., Estwick v. Walker*, 01 Civ. 2174, 2004 WL 1151581, at *5-7 (S.D.N.Y. May 24, 2004). Petitioner has not asserted any cause for the failure to raise this issue on direct appeal. While he filed a coram nobis application alleging that appellate counsel was ineffective for failing to assert that trial counsel's representation was deficient, that application was limited to issues regarding the expert testimony of Dr. Knutson. Nor, as discussed below, has he demonstrated prejudice relating to jury selection. In any event, the ineffective-assistance claim involving trial counsel's conduct with respect to the selection of this juror clearly fails on the merits for the reasons discussed below.

as determined by the Supreme Court of the United States.

## A.     Applicable Law

The general standards for ineffective assistance of counsel were articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-696 (1984).  This test requires an affirmative showing that counsel's performance fell below an objective standard of reasonableness, and that prejudice resulted because there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, 466 U.S. at 688, 694.  An ineffective-assistance claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (citing *Strickland*, 466 U.S. at 697).

When assessing counsel's performance, courts "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (quoting *Strickland*, 466 U.S. at 689).  Courts should not use hindsight to second-guess sound tactical decisions made by attorneys. *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) (citing *Strickland*, 466 U.S. at 689).

In evaluating the prejudice component of *Strickland*, a "reasonable probability" that the outcome of the proceeding would have been different means "a probability sufficient to undermine confidence in the outcome." *Strickland* 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable." *Santone v. Fischer*, 689 F.3d 138, 155 (2d Cir. 2012) (citing *Strickland*, 466 U.S. at 693).  Unlike

14

the performance determination, the prejudice analysis may be made with the benefit of hindsight. *McKee v. United States*, 167 F.3d at 106-107 (citing, *inter alia*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

The "AEDPA requires the federal habeas court to accord deference to the state court's ruling on claims of ineffective assistance of counsel." *Santone v. Fischer*, 689 F.3d at 154. As the Supreme Court stated in *Harrington v. Richter*, 131 S. Ct. at 788:

> The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

(citations omitted).

## B. Exhaustion

Respondent concedes that the federal ineffective-assistance-of-counsel claims asserted in the instant petition were also raised, in federal constitutional terms, in petitioner's Section 440.10 motion (Ex. O, Dkt. No. 14-23), or in his application to amend that motion (Ex. Q, Dkt. No. 14-25). (Resp't's Mem. of Law at 23-24). However, respondent argues that petitioner failed to exhaust most of his ineffective-assistance claims because he purportedly failed to raise them in federal constitutional terms in his pro se application for leave to appeal to the Third Department (Ex. Z, Dkt. No. 14-34), or his counsel's later application for leave (Ex. AA, Dkt. No. 14-1).

As petitioner argues in his Reply Affidavit (at 18, Dkt. No. 22-1), his pro se leave application to the Third Department explicitly refers to the Sixth Amendment of the federal Constitution in relation to his "ineffective assistance of counsel" claims in

several places, including the concluding paragraph.  (Ex. Z, Dkt. No. 14-34 at 21).

Counsel's separate leave application to the Third Department, although it did not

explicitly reference federal constitutional authority, did attach and formally

incorporate by reference petitioner's papers supporting his Section 440.10 motion

before the Supreme Court, which explicitly and repeatedly referenced federal

constitutional authority in support of the ineffective assistance claims.  (Ex. AA, Dkt.

No. 14-1 at 5-6 (attaching and making a part of the leave application petitioner's

Notice of his Section 440.10 motion (Ex. O, Dkt. No. 14-23 at 1-2) and his supporting

Affidavit and Memorandum of Law (Ex. O, Dkt. No. 14-23 at 4-24)).  The court finds

that the petitioner clearly alerted the Third Department to the federal constitutional

aspects of his ineffective assistance claims, and thereby properly exhausted those

claims in state court.

### C.     AEDPA Review of Ineffective-Assistance Claims on the Merits

The Supreme Court, Clinton County, denied petitioner's Section 440.10 motion,

which claimed that his trial counsel provided ineffective assistance of counsel through

a number of particular acts and omissions.  (Ex. X, Dkt No. 14-32; Ex. Y, Dkt. No. 14-

33).  The Third Department denied leave to appeal the denial of that motion in

summary fashion.  (Ex. CC, Dkt. No. 14-4).  Even if each state court did not explicitly

address all of petitioner's clearly asserted federal ineffective assistance claims in these

decisions, the denial of the Section 440.10 motion constituted a decision with respect

to these claims on the merits.  Accordingly, the state court's rejection of these claims

must be reviewed under the highly-deferential AEDPA standard outlined above.

*Harrington v. Richter*, 131 S. Ct. at 784- 85.[8]

### 1.    Advising Petitioner Regarding Plea Negotiations

To assess whether a defense attorney has provided ineffective assistance in the context of plea bargaining, courts apply the familiar framework established in *Strickland v. Washington*, 466 U.S. 668 (1984). *U.S. v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (citing *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (applying *Strickland* in the context of guilty pleas)). The Supreme Court has recently confirmed that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected. *Missouri v. Frye*, __ U.S. __, __, 132 S. Ct. 1399, 1407-08 (2012). The Supreme Court declined specifically to define and enumerate the Sixth Amendment obligations of defense counsel in this context, but

---

[8] This federal habeas petition and petitioner's prior Section 440.10 motion (Ex. O) claimed that trial counsel provided ineffective assistance in a number of specific ways, both prior to and during trial. (Pet., Dkt. 1 at 5-8). The Acting Supreme Court Justice's decisions denying petitioner's Section 440.10 motion (Exs. X, Y) similarly focused on each specific act or omission of defense counsel raised by petitioner, finding that they did not constitute ineffective assistance. If a court were to determine that some aspect of a defense attorney's representation fell below an objective standard of reasonableness, it might be necessary to evaluate whether the overall quality of counsel's representation was constitutionally deficient or whether the petitioner was prejudiced as a result. See *Harrington v. Richter*, 131 S. Ct. at 791 ("while in some instances 'even an isolated error' can support an ineffective-assistance claim if it is 'sufficiently egregious and prejudicial,' . . . it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy) (citation omitted); *Strickland v. Washington*, 466 U.S. at 695-696 ("In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.") Given this court's conclusion that the state court did not unreasonably apply Supreme Court law in finding that trial counsel did not provide constitutionally deficient representation in any of the specific ways petitioner claimed, a separate analysis of counsel's overall effectiveness, as Respondent undertook in his memorandum of law (at 39-42), is not required.

held "as a general rule, counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 1408. The court in *Missouri v. Frye* held further:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.

*Id.* at 1409.

Petitioner claims that his trial counsel failed to advise him properly during plea negotiations, by not informing petitioner of his maximum sentencing exposure if he went to trial and by not providing "any advice whatsoever" to assist petitioner in deciding whether to accept or reject plea offers. "As a result the petitioner received a sentence fifteen (15) times more than the District Attorney's [first] Plea Offer." (Pet., Dkt. No. 1 at 6). Following an evidentiary hearing at which both petitioner and trial counsel testified, the Acting Supreme Court Justice denied similar claims in petitioner's Section 440.10 motion. Finding that defense counsel "to be at least as credible" as petitioner, the state court made the factual determination that petitioner "failed to prove by a preponderance of the evidence that his trial counsel failed to convey to him all plea offers made by the People, failed to give him advice regarding plea offers, [and] failed to disclose to him that he was facing possible life prison. . . ." (2/10/2012 Dec. & Order at 1-2, 3-4, Ex. Y, Dkt. No. 14-33). Because petitioner has

failed to rebut the state court's factual findings with "clear and convincing evidence," the claim asserting ineffective assistance of trial counsel relating to the plea bargaining process should be denied. 28 U.S.C. § 2254(e)(1).

During the evidentiary hearing conducted in connection with petitioner's Section 440.10 motion, defense counsel testified that, during an early appearance in town court, he discussed with the petitioner the particulars of the District Attorney's first plea offer, involving a two-year prison sentence. Counsel also explained "how accepting a plea offer might be better than going to trial because if you lost at trial you could be maxed out on the charges and you would receive a much greater sentence." (HT. 37-39, 75-76). Petitioner rejected the offer "fairly quickly" and made a counteroffer, to serve one year in county jail, which the District Attorney did not accept. (HT. 39, 75, 77). Counsel arranged for the originally-assigned Assistant District Attorney ("ADA") to keep the two-year offer open for several months thereafter; but when a new ADA took over the case, she modified the plea offer, which now called for a ten-year prison sentence. (HT. 39-41, 56). Counsel discussed the revised offer with petitioner, who was dissatisfied with, and not amendable to accepting it. (HT. 42-43, 57).[9]

---

[9] Defense counsel acknowledged that he never provided petitioner with a copy of the written plea offers, although he believed he showed him a copy of one agreement. (HT. 52, 55). Given counsel's oral advice to the petitioner regarding plea offers, any failure to provide a written copy of an offer does not amount to objectively unreasonable representation. *See, e.g.*, *Mitchell v. Rock*, 11-CV-2642, 2013 WL 4041545, at *14, 18-19 (E.D.N.Y. Aug. 9, 2013) (rejecting ineffective assistance claim in habeas petition relating to defense counsel's advice regarding the government's plea offer, even though counsel never provided petitioner with a copy of the written plea offer).

During the hearing, petitioner acknowledged that defense counsel advised him of the original two-year plea offer by telephone, but petitioner denied rejecting that offer in town court in August 2007, even when confronted with minutes of the court proceeding indicating that petitioner found the plea offer unacceptable. (HT. 8, 23-26).[10] Petitioner also admitted that, on one occasion prior to trial, defense counsel advised that he was facing a sentence of 15 to 25 years to life on the pending charges. (HT. 13-14). Petitioner otherwise denied that his defense attorney communicated or provided any information or advice with respect to the plea offers from the District Attorney. In fact, petitioner claimed that defense counsel Gaudreau did not represent him between the time of the first plea offer and his arraignment, months later, during which time that attorney was clearly engaging in ongoing plea negotiations with the District Attorney's Office. (HT. 9-11, 13-15).[11]

In a motion to renew his Section 440.10 motion, petitioner proffered evidence that Attorney Gaudreau never submitted a voucher to the state court for payment of his fees for representing petitioner, as he claimed at the prior hearing. Petitioner also

---

[10] In his reply Memorandum of Law in this action (at 20-21), petitioner appeared to acknowledge that he made a counteroffer to the District Attorney's Office which would have involved one year in jail. (Dkt. No. 22-1 at 21-22).

[11] Attorney Gaudreau's appointment in town court was revoked after petitioner obtained a new job that increased his income. (HT. 9, 50-51). Counsel testified that he agreed to continue to represent petitioner, although he was never compensated as agreed. During the period before he was re-appointed as petitioner's defense attorney following indictment, Mr. Gaudreau communicated with the District Attorney and the Court as petitioner's lawyer, as documented by various documents referenced during the hearing. (HT. 39-42, 47-48, 50-52, 67, 78-79). In denying the Section 440.10 motion, the Supreme Court Justice specifically found that at "all times relevant to this motion, Attorney Gaudreau represented Mr. Beauharnois in connection with his criminal proceeding." (2/10/2012 Dec. & Order at 3).

submitted an affidavit from a prisoner who presented information, admittedly not first-hand, that Mr. Gaudreau had an intimate relationship with the ADA who tried petitioner's criminal case. (Ex. DD, Dkt. No. 14-6 at 2, 5-7, 14-15). The state Supreme Court Justice denied the motion to renew, finding, *inter alia*, that the prisoner's affidavit contained triple hearsay and had no probative value. The state court also found that, given Attorney Gaudreau's equivocal testimony about his request for payment for his representation of petitioner at the prior hearing, the fact that a reimbursement voucher was never submitted "would not significantly impact the Court's determination regarding Mr. Gaudreau's credibility." (6/4/2012 Dec. & Order at 2, Dkt. No. FF).

Under the extremely narrow scope of review of factual findings of a state court under Section 2254(e), I would not disturb the state judge's determination that Attorney Gaudreau's testimony regarding his advice during plea negotiations was at least as credible as that of petitioner. I conclude that the finding that petitioner failed to prove by a preponderance of the evidence that his trial counsel neglected to convey to him the plea offers, failed to give petitioner advice about those plea offers, and did not discuss his sentencing exposure if he rejected those offers, was not an "unreasonable determination of the facts in light of the evidence presented." *Mitchell v. Rock*, 11-CV-2642, 2013 WL 4041545, at \*14-5, 20 n.14 (E.D.N.Y. Aug. 9, 2013) (deferring, under 28 U.S.C. § 2254(e), to the factual/credibility findings of the state court regarding the advice provided by defense counsel to petitioner regarding plea bargaining); *see also Green v. Portuondo*, 02-CV-4198, 03-MISC-66, 2003 WL

23199872, at *14-16 (E.D.N.Y. Oct. 27, 2003) (the trial court found defendant's claims that counsel supposedly failed to advise him of his "exposure" if convicted after trial was "incredible"; for purposes of federal habeas review, the lower court's factual findings are presumed to be correct in the absence of clear and convincing rebuttal evidence).

In connection with his Section 440.10 motion, petitioner relied on *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996) and *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999) for the proposition that a defense attorney who does not explicitly advise his client about whether a plea bargain is desirable necessarily provides ineffective assistance. (Ex. O, Dkt. No. 14-23 at 11). Subsequently, the Second Circuit has narrowly construed *Boria*, noting that the defense attorney in that case did not "in any way or at any time discuss[] . . . the advisability of accepting or rejecting the offered plea." *Purdy v. U.S.*, 208 F.3d 41, 46 (2d Cir. 2000). The *Purdy* court rejected the notion that dicta in *Boria* creates a *per se* rule that defense counsel must explicitly give a criminal defendant "an ultimate opinion as to the wisdom of a plea." *Id*. at 46-47.

As noted above, petitioner has failed to rebut, with "clear and convincing evidence," the state court's factual/credibility determination that petitioner did not overcome the testimony of his defense attorney that he advised his client about the merits of the District Attorney's plea offers and petitioner's potential exposure if he went to trial. Based on those factual findings, the state court did not unreasonably apply the law of the Supreme Court, as supplemented by the Second Circuit in *Boria*

22

and its progeny, in concluding that trial counsel did not provide ineffective assistance in connection with the plea bargaining process. *See, e.g.*, *Lake v. U.S.*, 465 F. App'x 33, 35 (2d Cir. 2012) (although petitioner plausibly alleges that he relied to his detriment on defense counsel's advice that he reject a plea offer, he fails to allege any actionable professional lapse on counsel's part, such as a legal error or a complete failure to render advice; counsel's miscalculations regarding the Government's willingness to negotiate a more favorable deal or restore its initial plea offer represent, at best, strategic errors that are "virtually unchallengeable" under *Strickland*); *Purdy v. U.S.*, 208 F.3d at 45-46 (despite his decision to forgo explicitly telling his client whether he should accept a plea offer, defense counsel "successfully steered a course between the Scylla of inadequate advice and the Charybdis of coercing a plea" and provided advice "within the range of professional reasonableness").[12]

---

[12] For the reasons stated by the Second Circuit in *Purdy*, *Cullen v. U.S.* is also readily distinguishable from the instant case. In *Cullen*, "the defense attorney failed to communicate to defendant even the terms of the government's offer, let alone an accurate comparison of the sentencing ranges Cullen would have faced upon a plea of guilty and after a trial." *Purdy v. U.S.*, 208 F.3d at 48 (distinguishing *Cullen*, 194 F.3d at 404). In this case, as in *Purdy*, defense counsel clearly did explain the terms of the People's critical first plea offer; and there is no evidence that counsel mistakenly estimated petitioner's sentencing exposure if he went to trial. While there is less evidence in the record that defense counsel went into the details of the People's subsequent, more onerous plea offers, it is clear from the record that petitioner never expressed any interest in a plea bargain that would expose him to ten years or more in prison. Hence, petitioner could not establish any prejudice, even if counsel's advice with respect to the later plea offers was somehow deficient. *Missouri v. Frye*, 132 S. Ct. at 1408. As discussed below, since the Supreme Court's 2011 decision in *Cullen v. Pinholster*, 131 S. Ct. at 1398, a district court may not conduct a hearing in a habeas action to develop further evidence, but must rely on the evidence before the state court that decided an issue on the merits. *See Ridgeway v. Zon*, 424 F. App'x 58, 60 (2d Cir. 2011).

## 2.    Jury Selection

Petitioner claims that his trial attorney was ineffective for failing to inform the court that a juror named Tobrocke withheld a misdemeanor DWI conviction during voir dire, and for not following petitioner's instructions to challenge Tobrocke for cause. (Pet., Dkt. No. 1 at 6 ).  In denying petitioner's Section 440.10 motion on similar grounds, the Supreme Court Justice noted that juror Tobrocke's written questionnaire (Ex. JJ, Dkt. No. 14-18), acknowledged that he or someone close to him, had been convicted of a crime, and neither attorney followed up with questions on that point.[13]  (11/17/2011 Dec. & Order at 3, Ex. X).  The state Supreme Court also found that petitioner's argument that juror Tobrocke failed to provide unequivocal assurances that he could be fair was meritless, which finding was amply supported by the transcript of that juror's voir dire (TT. at 381-82, 447-49, 459-60).[14]  (11/17/2011 Dec. & Order at 4).   The state court concluded that petitioner's trial attorney had no basis for challenging juror Tobrocke for cause, noting that a misdemeanor conviction does not disqualify jurors under New York law.  (*Id.* at 3).[15]  The Supreme Court

---

[13] It is clear from petitioner's Section 440.10 motion that, at the time of voir dire, he was aware that Tobrocke had a prior DWI conviction.  (Ex. O, Dkt. No. 14-23 at 16).

[14] Juror Tobrocke, a retired police officer, is identified in the transcript as the juror in seat number 16.  (TT. 373).  During voir dire, he stated "I think I'd be fair and impartial" in evaluating the testimony of law enforcement witnesses with whom he was acquainted.  He then stated he was "certain" he would judge their credibility "the same way as you would a stranger." (TT. 381-82).  Juror Tobrocke later denied he would give the law enforcement witnesses "extra credibility" or "the benefit of the doubt."  (TT. 447).  After being selected, the juror took an oath to try the action "in a just and impartial manner to the best of [his] ability."  (TT. 459-60).

[15] *See* N.Y. Judiciary Law § 510 (in order to qualify as a juror a person must not have a "felony conviction").

Justice also found that counsel's decision not to exercise a peremptory challenge against juror Tobrocke was a "'quintessentially tactical decision'" that was not "erroneous or even harmful to the [petitioner]." (*Id.* at 4).

The state court's conclusion that trial counsel's representation of petitioner in connection with voir dire was not constitutionally deficient is clearly not an unreasonable application of Supreme Court precedent. An attorney's actions during voir dire are considered matters of trial strategy entitled to substantial deference in the application of the *Strickland* standards. *See, e.g., Charlemagne v. Goord*, 05 Civ. 9890, 2008 WL 2971768, at *27 (S.D.N.Y. June 30, 2008) (Report-Rec.), *adopted*, 2011 WL 2150646 (S.D.N.Y. May 31, 2011); *Mills v. Lempke*, 11-CV-440, 2013 WL 435477, at *22 (W.D.N.Y. Feb. 4, 2013). The state court's factual finding that juror Tobrocke, a retired police officer, did not fail to disclose and did not lie about his DWI conviction, is clearly supported by the record, and petitioner has not rebutted that finding. 28 U.S.C. § 2254(e).

Given juror Tobrocke's clear voir dire responses that he could be impartial, counsel's failure to make a futile challenge for cause did not constitute ineffective assistance.[16] *See, e.g., Mills v. Lempke*, 2013 WL 435477, at *23 (trial counsel's decision not to challenge a particular juror certainly was not objectively unreasonable, particularly in light of the juror's consistent responses that he could be fair and impartial, and would not assign undue weight to a law enforcement officer's

---

[16] *See also Guerrero v. Payant*, 08-CV-3062, 2010 WL 2545818, at *19 (E.D.N.Y. June 21, 2010) (employment in law enforcement "is not an automatic ground for dismissal for cause in a criminal case") (collecting New York and federal cases).

testimony); *Figueroa v. Heath*, 10-CV-121, 2011 WL 1838781, at *8-9 (E.D.N.Y. May 13, 2011) (even when a juror initially expresses reservations about his or her ability to be impartial, if that juror later "promises to try to decide the case based on the evidence presented, that reassurance will generally be sufficient for both the attorney and the court.") (*citing United States v. Towne*, 870 F.2d 880, 885 (2d Cir. 1989)).  Where a petitioner asserts a claim of ineffective assistance based on trial counsel's failure to challenge a prospective juror during voir dire, the petitioner, to demonstrate "prejudice," must show that the prospective juror was actually biased against him.  *See, e.g., Guerrero v. Payant*, 08-CV-3062, 2010 WL 2545818, at *20 (E.D.N.Y. June 21, 2010); *Mills v. Lempke*, 2013 WL 435477, at *23.  Given the record of juror Tobrocke's voir dire, petitioner has not demonstrated actual bias on this juror's part, or prejudice.[17]

### 3. Alleged Juror Misconduct

Petitioner claims that his trial counsel was ineffective for failing to inform the court that jurors were sleeping and were not paying attention while socializing, *inter alia*, with court personnel.  (Pet., Dkt. No. 1 at 6).  The state court denied similar

---

[17] In his Section 440.10 motion, petitioner stated that he consented to defense counsel using the last peremptory challenge on another juror because counsel promised to challenge juror Tobrocke for cause.  (Ex. O, Dkt. No. 14-23 at 17).  By the time Tobrocke was selected as a juror, trial counsel had exercised 20 peremptory challenges and eight challenges for cause, and had refused to consent to three of the People's numerous for-cause challenges. (TT. 109-13, 205-14, 284-91, 361-65, 453-56).  "Counsel's active participation in voir dire coupled with his challenges to a number [of] prospective jurors reveals that the decision not to exclude [Tobrocke] was the product of sound trial strategy rather than ineffective assistance."  *Baxter v. Conway*, 07 Civ. 2759, 2011 WL 5881846, at *20 (S.D.N.Y. July 29, 2011) (collecting cases) (Report-Rec.), *adopted*, 2011 WL 5881190 (S.D.N.Y. Nov 23, 2011).

claims in petitioner's Section 440.10 motion (Ex. O, Dkt. No. 14-23 at 20-22), noting that the judge did not observe any juror sleeping. The state judge found that the purported observations by petitioner and his friends and family did not support a conclusion that the juror "was in fact doing more than closing eyes while listening." (11/17/2011 Dec. & Order at 4). With respect to the other alleged juror misconduct, the state judge found no authority that normal social interaction between jurors and court officers outside of the deliberation process provided any basis for relief. (*Id.* at 5).

Petitioner's claims about jurors sleeping or not paying attention "provide[] no foundation upon which a claim of ineffective assistance of counsel can be made, and a federal court may not grant habeas relief based upon unsubstantiated conclusions, opinions, or speculation." *Davis v. Sup't, Clinton Correc. Facility*, 10-CV-392T, 2011 WL 3420853, at *6 (W.D.N.Y. Aug. 4, 2011) (citing, *inter alia*, *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995)). *See also Hart v. Artus*, 09 Civ. 1032, 2012 WL 6628014, at *6 (S.D.N.Y. Dec. 20, 2012) (denying petitioner's claim that counsel was ineffective for failing to alert the court that a juror was sleeping while the jury charge was being read because the state trial court observed no juror sleeping and because there was no way of knowing whether a juror with his or her eyes closed was actually sleeping, as opposed to daydreaming or concentrating with eyes shut). As to the claim that a juror was acting "erratically" by laughing and speaking with a court officer, petitioner has offered no authority contrary to the state court's conclusion that normal social interaction between a juror and court personnel outside of deliberations

is not improper. And, by failing to even suggest how the outcome of the trial was influenced by the alleged juror misconduct, petitioner fails to satisfy the prejudice prong of *Strickland*. *See Faria v. Perez*, 04-CV-2411, 2012 WL 3800826, at *12 (E.D.N.Y. Sep. 2, 2012) ("habeas relief is available for juror misconduct only where a petitioner can demonstrate that he has suffered prejudice as a result") (citations omitted). Clearly, the state court did not unreasonably apply applicable Supreme Court authority in concluding that trial counsel's failure to follow up on the petitioner's purported observations of the jurors did not constitute ineffective assistance that was prejudicial to petitioner.

### 4.    Confronting Dr. Knutson's Expert Testimony

Petitioner claims that his trial attorney deprived him of constitutionally adequate representation by failing to investigate, consult with an expert, and educate himself in preparing to confront the expert testimony of the minor victim's treating pediatrician, Dr. Knutson. (Pet., Dkt. No. 1 at 7). In denying petitioner's Section 440.10 motion, the state court found that the defendant failed to establish that trial counsel did not adequately investigate and educate himself in order to respond to Dr. Knutson's testimony. (11/17/2011 Dec. & Order at 5-6, Ex. X). The state Supreme Court stated that it was "clear from defense counsel's cross-examination of Dr. Knutson that he did make an effort to educate himself on the relevant medical issues." (*Id.*). The state court judge also concluded that there was no evidence that Dr. Fedi,[18] the gastroenterologist named on the defense witness list, was available to testify or that he

---

[18] The judge's Decision and Order misspelled the doctor's name as "Fedy." (*Id.* at 6).

would have been helpful to the defense. (*Id.*). The state court judge also noted that petitioner did not submit an affidavit from Dr. Fedi in support of his motion. (*Id.*). This court finds that the state court's denial of petitioner's federal claim of ineffective assistance of trial counsel on these grounds was not an unreasonable application of clearly-established Supreme Court law.

As noted, trial counsel did list a gastroenterologist, Dr. Fedi, on his witness list, but did not call him as a trial witness. Petitioner claimed, in connection with his Section 440.10 motion, that trial counsel never met with Dr. Fedi, for whom petitioner's wife worked. (Ex. O, Dkt. No. 14-23 at 32; Ex. Z, Dkt. No. 14-34 at 13-15; TT. 27-28, 912). As noted, however, petitioner did not produce an affidavit from Dr. Fedi, or otherwise supported his claim that the doctor never met with defense counsel.

At trial, Dr. Knutson, a pediatrician, testified that he treated the minor victim since 2000 and examined him in the presence of his mother on June 7, 2007. (TT. 803, 808). Dr. Knutson testified that the minor victim's anus was "patulous," in that it fell open freely, leaving an opening of approximately one inch, allowing the doctor to peer into the rectum easily. The victim's sphincter did not display the normal "anal reflex" in that it did not contract when the victim's buttocks were spread apart and the skin adjacent to the anus was touched. (TT. 814-18). Based on the victim's statements to the doctor that his stepfather "had forced him to have rectal intercourse . . . every Thursday for several years," and in the absence of a spinal injury or other cause for the victim's condition, Dr. Knutson opined that the damage to victim's anus

had been caused by "repeated forced entry of his anus and rectum by his stepfather's penis." (TT. 812, 818-23).

If he had not heard the victim's statement about the sexual abuse at the hands of his stepfather, Dr. Knutson stated that it would have been clear that "something very wrong was going on," but further factual investigation would have been required to pinpoint the cause of the damage to the victim's anus. (TT. 822-24). However, the doctor did not believe that any further medical procedures would have been necessary to assess the victim's physical condition. (TT. 824-25). Dr. Knutson ruled out chronic constipation as the cause of the damage to the victim's anus, and noted that he was not aware that the victim had ever been treated at his practice for the symptoms he was experiencing now, including soiling of his pants, or chronic constipation. (TT. 803-04, 819, 821-22).

Petitioner's trial attorney conducted a vigorous cross-examination of Dr. Knutson. Counsel succeeded in getting Dr. Knutson to concede, *inter alia*, that (1) there is more than one cause of a patulous anus (TT. 829); (2) encopresis (fecal soiling) can develop as a result of chronic constipation (TT. 830); (3) passing of large and hard stools by a child over the course of several years could stretch the anal muscle (TT. 831-32); (4) other medical professionals had examined the minor victim during some prior visit to Dr. Knutson's practice (TT. 842-43); and (5) the minor victim made no complaints of anal bleeding (TT. 847). Defense counsel confronted Dr. Knutson with an article written by a medical school professor that arguably associated chronic constipation and encopresis in children with a "patulous" anus.

(TT. 851-53).[19]  Dr. Knutson responded that, if a child's sigmoid colon was full of feces as a result of constipation, that could cause an opening of the anus; however, Dr. Knutson saw no evidence that the victim was constipated during his June 2007 examination.  (TT. 855).  The pediatrician did not waver in his medical opinion that the damage to the minor victim's anus and the lack of an anal reflex could not be explained by chronic constipation, but was the result of involuntary penetration.  (TT. 851-55).

Defense counsel also cross-examined Dr. Knutson about the duration and breadth of his examination of the minor victim, particularly his anus.  (TT. 826-27, 828-29, 842).  During the defense case, trial counsel called the victim's mother, an ambulatory surgery technician who worked, for approximately ten years, with doctors who performed colonoscopies and gastroscopies.  (TT. 911-12).  Ms. Beauharnois testified that the minor victim had a long history of chronic constipation and fecal soiling, a matter she raised with a doctor at Dr. Knutson's practice on at least one prior occasion.  (TT. 916-18, 920-21, 925-26).  She testified about her son's office visit to Dr. Knutson on June 7, 2007, suggesting that the doctor had exaggerated the thoroughness of his examination of the victim.  (TT. 931-34).

As noted, petitioner filed a coram nobis application, in which he claimed appellate counsel was ineffective for failing to raise the purported ineffectiveness of trial counsel in confronting Dr. Knutson's expert testimony.  In connection with that

---

[19] Petitioner has claimed that he found and supplied this article to trial counsel, but has provided no documentation of that claim.  (Ex. G, Dkt. No. 14-11 at 8).

motion, petitioner submitted a few medical articles, including the one defense counsel used at trial, which petitioner contended supported the theory that the minor victim's patulous anus could have been caused by chronic constipation. (Ex. G, Dkt. No. 14-11 at 26-34; Ex. O, Dkt. No. 14-23 at 32). The article used by defense counsel at trial made a single reference to "patulous anus," suggesting that a physician examining a child with encopresis should inspect the anus and "notice," *inter alia*, "a patulous anus, and the anal reflex contraction to pin prick or stroking of the anal skin." The article also noted that "[e]xamination may reveal a rectum packed with stool." (Ex. G, Dkt. No. 14-11 at 32-33). Nothing in the article is inconsistent with Dr. Knutson's explanation that the damage to the minor victim's anus and the lack of an anal reflex should be distinguished from an open or patulous anus caused by constipation and a colon packed with feces.

Petitioner also proffered a 1912 article in the California State Journal of Medicine entitled "Patulous Anus: It's Clinical Significance." (Ex. G., Dkt. No. 14-11 at 29-30). The article made two observations which, again, are entirely consistent with Dr. Knutson's testimony: (1) "Other foreign bodies in the rectum, such a large fecal impaction, may also cause the anus to become patulous[;]" and (2) "In pederasts a patulous anus gives silent witness to their secret practices." (*Id.*). Particularly given the petitioner's failure to offer an affidavit supporting his medical theory from Dr. Fedi–who worked with petitioner's wife–or any other medical professional, this court has serious doubt that a defense counsel exercising reasonable diligence could have

done more to mitigate the testimony of Dr. Knutson.[20]  However, as discussed above, the Supreme Court's standard for reviewing a state court ruling on an ineffective-assistance-of-counsel claim, imposes a much more daunting burden on petitioner. *Harrington v. Richter*, 131 S. Ct. at 788 ("[T]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.")

In *Harrington v. Richter*, the Supreme Court reversed the grant of a writ in a case arising from a murder conviction, rejecting Ninth Circuit's *en banc* holding that "because petitioner's attorney had not consulted forensic blood experts or introduced expert evidence, the California Supreme Court counsel could not reasonably have concluded counsel provided adequate representation." *Id*., 131 S. Ct. at 783, 788.  The Supreme Court held that there are "countless ways to provide effective assistance in any given case," and although "[i]t can be assumed that in some cases counsel would

---

[20] *See, e.g., Campbell v. Poole*, 555 F. Supp. 2d 345, 363-65 (W.D.N.Y. 2008) (in a child sex-abuse case, where petitioner never obtained a supporting affidavit demonstrating the existence of an expert opinion countering that offered by the prosecution expert, where the medical articles petitioner submitted did not conclusively support his position on the medical issues, and where defense counsel obtained significant concessions from defense counsel in cross-examination, trial counsel did not provide ineffective representation by not retaining a medical expert) (citing, *inter alia*, *Murden v. Artuz*, 253 F. Supp. 2d 376, 389 (E.D.N.Y. 2001) (dismissing claim of ineffective assistance of trial counsel based on the failure to retain an expert witness where petitioner failed to introduce affidavit from potential expert witness)); *Savinon v. Mazucca*, 04 Civ. 1589, 2005 WL 2548032, at *32, 33 (S.D.N.Y. Oct. 12, 2005) (rejecting ineffectiveness claim because petitioner "provide[d] no expert affidavit to th[e] Court that would permit a finding that anything testified to by [the People's expert] was inaccurate[;]" "the decision of trial counsel not to call an expert 'cannot be considered objectively unreasonable' given that petitioner 'has only presented his vague hope that another expert might have reached a different result than the government expert'") (citation omitted) (Report-Rec., *adopted*, 2006 WL 2669331 (S.D.N.Y. Sep. 18, 2006), *aff'd*, 318 F. App'x 41 (2d Cir. Mar. 31, 2009).

be deemed ineffective for failing to consult or rely on experts, . . . even that formulation is sufficiently general that state courts would have wide latitude in applying it." *Id*. at 788-89.

The *Richter* court continued: "Strickland does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Id*. at 791. As the Supreme Court also observed:

> In many instances cross-examination will be sufficient to expose defects in an expert's presentation. When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict. And while in some instances "even an isolated error" can support an ineffective-assistance claim if it is "sufficiently egregious and prejudicial," . . . it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.

*Id*. (citation omitted).

Defense counsel pursued a trial strategy that reasonably focused on the substantial inconsistencies in the minor victim's various statements about his stepfather's abuse.[21] Petitioner has failed to substantiate the claims that his defense attorney failed to consult with a medical expert[22] or to otherwise educate himself with respect to the relevant medical issues in the case. Counsel's cross-examination of Dr.

---

[21] Given that Dr. Knutson admitted that part of the basis for his conclusion that the damage to the minor victim's anus had been caused by repeated rectal intercourse was the explicit statement regarding the sexual abuse by the victim, a focus on the credibility of the victim was a reasonable strategy.

[22] *See Ridgeway v. Zon*, 424 F. App'x 58, 59-60 (2d Cir. 2011) (although the record before the state court is sparse, it failed to establish conclusively that trial counsel in a child sex abuse case had not consulted a medical expert; thus petitioner has failed to demonstrate that the state court's denial of petitioner's ineffective assistance claim on that basis was an unreasonable application of federal law).

Knutson demonstrated a competent effort to overcome a solid medical opinion.[23] Nor has petitioner supported his assertion that trial counsel failed to call a rebuttal expert out of sloth, and not pursuant to a reasonable trial strategy.[24] Petitioner has challenged trial counsel's handling of the trial in other, relatively insignificant respects, and those claims do not establish that his overall representation fell below an objective standard of reasonableness. This court concludes that petitioner has failed to establish that the state court unreasonably applied relevant Supreme Court authority, as articulated in *Strickland* and *Richter*, in rejecting this claim of ineffective assistance of trial counsel.

Petitioner's Section 440.10 motion cited a series of Second Circuit decisions holding that a trial counsel was ineffective for failing to consult with or call a medical witness in a child sex abuse case. (Ex. O at 30-31.) *See Gersten v. Senkowski*, 426 F.3d 588, 607-11 (2d Cir. 2005); *Eze v. Senkowski*, 321 F.3d 110, 126-30 (2d Cir. 2003); *Pavel v. Hollins*, 261 F.3d 210, 223-26 (2d Cir. 2001); *Lindstadt v. Keane*, 239 F.3d 191, 201-02 (2d Cir. 2001). This line of cases articulates and applies the following gloss on the *Strickland* standard for ineffective assistance of counsel in sex

---

[23] *See Harrington v. Richter*, 131 S. Ct. at 791-92 (finding petitioner had not established that trial counsel was deficient under *Strickland* where he "elicited concessions from the State's experts and was able to draw attention to weaknesses in their conclusions"); *Thomas v. Conway*, 07-CV-6311T, 2010 WL 2330360, at *5-6 (W.D.N.Y. June 7, 2010) (rejecting an ineffective-assistance claim in a child sex abuse case, because "Petitioner aptly cross-examined the prosecution's expert witnesses [and a treating physician], emphasizing that the findings of the medical experts and treating physician were not necessarily indicative of sexual abuse.").

[24] *See Harrington v. Richter*, 131 S. Ct. at 790 ("Although courts may not indulge 'post hoc rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect."'") (internal citations omitted).

abuse cases:

> In sexual abuse cases, because of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel. . . . This is particularly so where the prosecution's case, beyond the purported medical evidence of abuse, rests on the credibility of the alleged victim, as opposed to direct physical evidence such as DNA, or third party eyewitness testimony. . . .

*Gersten v. Senkowski*, 426 F.3d at 607 (citations omitted). Respondents argue that, in light of more recent Supreme Court authority applying *Strickland* in the context of habeas actions, the court should not apply these Second Circuit standards in reviewing a state court decision on the merits. (Resp't's Mem. of Law at 49-50).[25] However, this court has not found any more current Second Circuit authority overturning the holding in *Gersten* that district courts are "bound to apply [the Second Circuit's] precedents governing when applications of *Strickland* are "unreasonable," [in applying] the AEDPA standard of review." *Id.* at 607 n.1. Accordingly, this court will address the *Gersten/Eze/Pavel/Lindstadt* line of Second Circuit cases.

As in *Gersten*, the prosecution's case against the petitioner "rested centrally on the alleged victim's testimony and its corroboration by the indirect physical evidence as interpreted by [a] medical expert." *Gersten*, 426 F.3d at 608. However, *Gersten*

---

[25] *See, e.g.*, *Renico v. Lett*, 559 U.S. 766, 778-79 (2010) (the Court of Appeals erred in relying upon its own decision articulating a three-factor test to determine whether a judge has exercised sound discretion in declaring a mistrial under the seminal Supreme Court case; that circuit decision does not constitute "clearly established Federal law, as determined by the Supreme Court," § 2254(d)(1), so any failure to apply that decision cannot independently authorize habeas relief under AEDPA); *Parker v. Matthews*, __ U.S. __, __, 132 S. Ct. 2148, 2155 (2012) (the Sixth Circuit erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision under 28 U.S.C. § 2254(d)(1)).

and the prior Second Circuit cases upon which it relies are distinguishable from the instant case for a number of reasons. *Eze, Pavel,* and *Lindstadt* involved a litany of significant ways in which trial counsel's representation was deficient. *Eze*, 321 F.3d at 136-37 (identifying eight deficiencies in trial counsel's representation, including ignoring a key inconsistency in the victim's testimony); *Pavel*, 261 F.3d at 216-26; *Lindstadt*, 239 F.3d at 199-204. As discussed elsewhere herein, the other allegation of ineffective assistance of trial counsel by this petitioner are without merit.[26]

In the *Gersten* line of cases, unlike the instant case, petitioner established that defense counsel had clearly failed to consult with any expert medical witness. *Gersten*, 426 F.3d at 607-08; *Eze*, 321 F.3d at 128; *Pavel*, 261 F.3d at 223-24; *Lindstadt*, 239 F.3d at 201-02.[27] Defense counsel's effective cross-examination of Dr. Knutson indicates that he educated himself regarding the relevant medical issues, unlike trial counsel in *Gersten*, 426 F.3d at 608-10; *Eze*, 321 F.3d at 129; *Pavel*, 261 F.3d at 224-25; and *Lindstadt*, 239 F.3d at 201-02.[28] Unlike the petitioners in *Gersten*,

---

[26] *See, e.g., Thomas v. Conway,* 07-CV-6311T, 2010 WL 2330360, at *5-6 (W.D.N.Y. Jun 7, 2010) (distinguishing *Lindstadt* and its progeny because there is no evidence that petitioner's attorney committed multiple errors at trial, that, when viewed in the aggregate, amount to constitutionally defective assistance); *Campbell v. Poole*, 555 F. Supp. 2d at 364 (distinguishing *Eze*).

[27] *See Ridgeway v. Zon*, 424 F. App'x at 59-60, discussed above in note 22.

[28] *See, e.g., Wallace v. Poole*, 10-CV-00722, 2011 WL 6370596, at *8-9 (W.D.N.Y. Dec 20, 2011) (defense counsel's decision not to call a rebuttal expert in a sex abuse case was not unreasonable because, unlike the defense attorney in *Gersten*, who failed to educate himself sufficiently on the scientific issues relevant to the case and was thereby unable to mount an effective cross-examination of the prosecution's expert, petitioner's counsel possessed a knowledge and understanding of the subject matter of the prosecution expert's testimony, which he used to thoroughly and extensively cross-examine the expert).

426 F.3d at 608 and *Pavel*, 261 F.3d at 227-28, the petitioner in this case did not

submit an affidavit from a medical expert which raised serious questions about the

testimony of the prosecution medical expert.[29]

In the face of an uncertain record relating to the effectiveness of counsel in state

court proceedings, the Second Circuit has, in the past, remanded a habeas action to the

district court for an evidentiary hearing. *See, e.g., Eze v. Senkowski*, 321 F.3d at

136–37 (remanding for an evidentiary hearing at which defense counsel would be

provided an opportunity to explain whether certain acts and omissions relating to his

representation of the petitioner were justified by some plausible trial strategy).

However, in 2011, the Supreme Court held that habeas "review under § 2254(d)(1) is

limited to the record that was before the state court that adjudicated the claim on the

merits." *Cullen v. Pinholster,* 131 S. Ct. at 1398. The Second Circuit has since

recognized that *Cullen* precludes the option of a remand to the district court for an

evidentiary hearing of the sort ordered in *Eze*. *Ridgeway v. Zon*, 424 F. App'x at 60.

Based on *Ridgeway* and the other authority cited herein, this court concludes that

petitioner has not established that the state court's denial of his claim of ineffective

assistance of trial counsel relating to the expert testimony of Dr. Knutson was an

unreasonable application of *Strickland* and its Supreme Court progeny.

**5.    Alleged *Brady*/*Rosario* Violation**

Petitioner claims that his trial counsel was ineffective for failing to assert that

---

[29] *See Campbell v. Poole*, 555 F. Supp. 2d at 363-65 and other cases cited in note 20.

the People violated *Rosario*[30] and *Brady*[31] by failing to produce some of the minor

victim's school records, including bus passes, medical records, and psychological

records. (Pet., Dkt. No. 1 at 7). In denying the Section 440.10 motion, the state court

rejected a *Rosario*-based ineffective assistance claim, holding that petitioner did not

establish that the People controlled any of these records, or that they existed within the

school district's files. (11/17/2011 Dec. & Order at 5). This decision is consistent

with *Strickland*, as petitioner's counsel "can hardly be faulted for failing to discover

documents the existence of which is entirely speculative." *Miles v. Conway*, 739 F.

Supp. 2d 324, 341 (W.D.N.Y. 2010) ("Like his stand-alone *Brady* and *Rosario*

claims," petitioner's ineffective trial counsel claim, which was "premised on the

failure to seek witness statements," was without merit because petitioner "offered no

proof of the existence of the alleged witness statements"); *Shaw v. Sup't, Eastern

Correc. Facility*, 9:11-CV-887 (JKS), 2012 WL 4854643, at *5, 7 (N.D.N.Y. Oct. 11,

2012) (given the lack of evidence supporting petitioner's contention that a recording

of his interrogation ever existed, he is not entitled to habeas relief on a substantive

---

[30] Under New York law, a prosecutor must turn over "*Rosario* material"–any "written or recorded statements . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony." N.Y. Crim. Proc. Law § 240.45(1)(a); *People v. Rosario*, 9 N.Y.2d 286, 289, 213 N.Y.S.2d 448 (N.Y. 1961).

[31] *Brady v. Maryland*, 373 U.S. 83 (1962) articulated the federal constitutional requirement that the prosecution disclose potentially exculpatory or impeachment material. Petitioner's Section 440.10 motion articulated this aspect of his ineffective assistance claim in terms of failing to raise an alleged *Rosario* violation, without reference to *Brady*. (Ex. O, Dkt. No. 14-23 at 28-31). Notwithstanding the differences between substantive *Rosario* violations, which are not cognizable grounds for habeas relief, and *Brady* violations, petitioner's related ineffective assistance claim fails regardless of whether it is based on *Rosario*, *Brady*, or both.

*Brady*/*Rosario* claim or on any related ineffective assistance of counsel claim).

### 6.     Cross-Examination of Government Witnesses

Thomas G. Stuart, the minor victim's grandfather, testified at trial that the petitioner started working as a TSA screener in 2006. After a change in his schedule, petitioner had Thursdays and Fridays off and was often home alone with the minor victim on those days. (TT. 640-41). The victim testified that petitioner typically sexually abused him on Thursdays or Fridays when the two were at their residence after school. (TT. 546-49). Petitioner claims that the victim was often cared for in Mr. Stuart's home on Thursdays and Fridays, and that his trial counsel was ineffective for failing to use school-issued bus passes in cross-examining Mr. Stuart regarding when and how often the victim traveled to Mr. Stuart's residence after school. (Pet., Dkt. No. 1 at 7).

School social worker, Natalie J. Ward was the first person to whom the minor victim acknowledged sexual abuse at the hands of the petitioner in May 2007. (TT. 693-94, 702-03). The petition asserts that his defense attorney was ineffective in failing to cross-examine Ms. Ward about "pornographic" drawings that she showed to the minor victim in or before January 2006, when she began to counsel the victim regarding his problem with soiling his pants and declining academic performance. (Pet., Dkt. No. 1 at 8).[32]

---

[32] In his Section 440.10 motion papers, petitioner alleged that Ms. Ward admitted, during a parent conference in January 2006, that she previously showed the minor victim five sexually explicit drawings which she thought the victim may have created or that he may have been exposed to in school. (Ex. O, Dkt. No. 14-23 at 27).

In denying petitioner's Section 440.10 motion, the Supreme Court Justice noted "[t]here are many possible approaches to cross-examination of any given witness." (11/17/2011 Dec. & Order at 5). He held that counsel's cross-examination of Mr. Stuart and Ms. Ward was reasonable, and that any deficiencies did not amount to ineffective representation. (*Id.*). This court finds that the state court's ruling with respect to this particular ineffective assistance claim was not an unreasonable application of the Supreme Court's *Strickland* standards.

"The decision 'whether to engage in cross-examination, and if so to what extent and in what manner' is generally viewed as a strategic decision left to the sound discretion of trial counsel." *Lavayen v. Duncan*, 311 F. App'x 468, 471 (2d Cir. 2009) (citing *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002)). Throughout the trial, petitioner's attorney pursued a clear and defensible strategy of cross-examination, focusing on the considerable inconsistencies between the minor victim's trial testimony and his prior statements to other government witnesses. Under the highly deferential AEDPA standards applicable to ineffective assistance claims, *Harrington v. Richter*, 131 S. Ct. at 788, such reasonable strategic choices should not be second-guessed. *See McKee v. United States*, 167 F.3d at 106 ("actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance and a court may not use hindsight to second-guess counsel's tactical choices") (internal quotation and citations omitted).

Moreover, petitioner has not established prejudice by showing a reasonable probability that different cross-examination questions would have changed the

outcome of the trial. As to the purported deficiencies in trial counsel's cross-examination of Mr. Stuart, the state court found no evidence that the People possessed the victim's bus passes, or that the school district maintained such bus passes. Petitioner's counsel cannot be deemed ineffective for failing to confront Mr. Stuart with bus passes that neither defense counsel nor the prosecution possessed, and which petitioner only speculates would contradict Mr. Stuart's testimony regarding the frequency the victim was with his grandparents, and not the petitioner on Thursdays and Fridays after school. *See, e.g., Rosario v. Bennett*, 01 Civ. 7142, 2002 WL 31852827 at *33 (S.D.N.Y. Dec. 20, 2002) ("speculation satisfies neither Strickland's deficient performance nor prejudice prongs") (collecting cases) (Report-Rec.), *adopted*, 2003 WL 151988 (S.D.N.Y. Jan. 21, 2003).

Petitioner does not begin to explain how trial counsel's failure to question social worker Ward about the "pornographic" children's drawings that she purportedly showed to petitioner more than a year before his allegations of sexual abuse by petitioner would have had any significant impact on her testimony or the outcome of the trial. Defense counsel cross-examined Ms. Ward extensively, confronting her with school records that appeared at odds with her testimony, and covering inconsistencies in the minor victim's various statements about alleged sexual abuse. (TT. 712-36). Petitioner's claim that trial counsel improperly failed to ask about the sexually explicit children's drawings she purportedly showed the minor victim in January 2006 is a minor point which does not render trial counsel's cross examination of Ms. Ward objectively unreasonable. *See, e.g., Jackson v. Lee*, 10 Civ. 3062, 2010 WL 4628013,

at *42 (S.D.N.Y. Nov. 16, 2010) (given extent of other cross-examination of witness, "trial counsel's failure to question [the witness] on [a] minor point was not unreasonable nor ineffective conduct") (citing, *inter alia*, *Lavayen v. Duncan*, 311 F. App'x at 471) (Report-Rec.), *adopted*, 2010 WL 5094415 (S.D.N.Y. Dec. 10, 2010).

### 7. Advising Petitioner About Testifying at Trial

Petitioner claims that trial counsel was ineffective for failing to advise him as to the benefits and risks of testifying at trial. "Although counsel has the right, and indeed the professional duty, to advise his client of the benefits and pitfalls of a decision to take the stand on his own behalf, . . . the ultimate decision regarding whether to testify belongs to the defendant." *Brown v. Artuz*, 124 F.3d 73, 78-79 (2d Cir. 1997).

Following an evidentiary hearing, the state judge who denied petitioner's Section 440.10 motion noted that petitioner acknowledged that his lawyer counseled him about testifying before trial (HT. 19, 30), and that defense counsel clearly sought and obtained a recess during the trial so that he could further discuss, with petitioner, whether he should testify (TT. 996-97). (2/10/2012 Dec. & Order at 2, Ex. Y). Notwithstanding the contrary testimony of petitioner, the state court credited trial counsel's testimony that he did discuss the advantages and disadvantages of testifying with petitioner during the recess, although he advised that the final decision needed to be made by petitioner. (*Id.* at 3; HT 20-21, 30-34, 45-47, 69-74).[33] Petitioner's

---

[33] Petitioner acknowledged that unexpected trial testimony from his wife significantly affected the decision as to whether he should testify. Petitioner admitted, at the Section 440.10 motion hearing, that if he testified truthfully, he would likely have had to discredit his wife's testimony about a recordings she made of a meeting with the prosecuting attorney and her son prior to trial. (HT. 31-34).

unsupported claims that his lawyer refused to give him any advice about testifying do not rise to the level of "clear and convincing" evidence required to rebut the state judge's factual finding. *Rice v. Collins*, 546 U.S. at 338-39.

## IV. **Effectiveness of Appellate Counsel**

A defendant has the right to effective counsel on appeal, *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), and the *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). In the appellate context, counsel is not required to advance every non-frivolous argument that could be made. *Aparicio*, 269 F.3d at 95 (citing *Evitts*, 469 U.S. at 394; *Jones v. Barnes*, 463 U.S. 745, 75 (1983)). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). To satisfy the prejudice prong of Strickland, petitioner must show that "absent [appellate] counsel's deficient performance, there was a reasonable probability that [petitioner's] appeal would have been successful before the state's highest court." *James v. Artus*, 03 Civ. 7612, 2005 WL 859245, at *14 (S.D.N.Y. Apr. 15, 2005) (citing, *inter alia*, *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)).

Appellate counsel filed a 45-page brief (Ex. A, Dkt. No. 14) which provided ample and appropriate citations to the trial record and to relevant legal authority in support of four colorable claims: (1) the verdict was against the weight of the evidence (*Id.* at 25-37); (2) petitioner's conviction of first-degree Course of Sexual

Conduct Against a Child must be dismissed as a lesser-included offense of Predatory Sexual Assault Against a Child (*Id*. at 38-40); (3) petitioner's conviction of Endangering the Welfare of a Child must be dismissed as a lesser-included offense of Course of Sexual Conduct Against a Child and Predatory Sexual Assault Against a Child (*Id*. at 40-42); and (4) the sentence was excessive (*Id*. at 42-45). The Appellate Division agreed with counsel's second argument, and dismissed the charge of first-degree Course of Sexual Conduct Against a Child, resulting in a reduction of petitioner's period of post-release supervision from 20 years to 10 years. *People v. Beauharnois*, 64 A.D.3d at 1000.

Petitioner claims, as he did in his coram nobis motion (at 12-16, Ex. G, Dkt. No. 14-11), that his appellate counsel's representation was constitutionally deficient because he failed to argue that trial counsel was ineffective in countering Dr. Knutson's expert testimony. (Pet., Dkt. No. 1 at 5, 9). The Appellate Division summarily denied this claim (Ex. J, Dkt. No. 14-17)), and that decision was neither contrary to, nor an unreasonable application of, *Strickland*. As noted above, petitioner's claim that trial counsel provided ineffective assistance in countering the expert testimony of Dr. Knutson lacks merit. Accordingly, appellate counsel's representation was not deficient for failing to raise this issue on appeal, particularly because the appeal raised four other colorable claims, one of which proved to be successful. *See, e.g., Baptiste v. Ercole*, 766 F. Supp. 2d 339, 367 (N.D.N.Y. 2011) (since Petitioner's predicate claim for ineffective trial counsel is meritless, his claim for ineffective appellate counsel must be dismissed) (citing, *inter alia*, *Aparicio v.*

*Artuz*, 269 F.3d at 99-100)).

Petitioner further claims, for the first time in his habeas petition, that his appellate counsel was ineffective for failing to support his weight-of-the-evidence and excessive-sentence arguments with "matters of law." (Pet., Dkt. No. 1 at 5, 9). Because petitioner never raised this issue in a coram nobis motion, the claim is unexhausted; respondent, however, does not contend that the claim is procedurally barred because "[t]here is no limit on the timeliness or number of coram nobis proceedings that a petitioner can institute." (Resp't's Mem. of Law at 26, 29-30 (citing *Folkes v. Lee*, 10 Civ. 5416, 2011 WL 2610496, at *3-4 (E.D.N.Y. June 30, 2011)). This ambiguous and unsupported claim, however, can be rejected, in the alternative, because it is unmeritorious and frivolous. *Hernandez v. Conway*, 485 F. Supp. 2d at 273 n.1. As noted, appellate counsel's brief marshals appropriate legal authority and citations to the record supporting the four issues raised.

## V.   <u>Petit Jury Selection</u>

Petitioner claims, for the first time in this petition, that the jury was improperly selected and impaneled because during voir dire, juror Tobrocke concealed a criminal conviction, touted his experience as a former police officer, and failed to state unequivocally that he would be impartial despite his law enforcement background. (Pet., Dkt. No. 1 at 10-11). Although petitioner's Section 440.10 motion did raise the claim that trial counsel was ineffective for not challenging this juror, the underlying substantive claim is unexhausted because petitioner never raised it in state court. The claim is also procedurally defaulted because it is record-based and it was not raised in

petitioner's direct appeal. *See, e.g., Lozada v. Cripps*, 09 Civ. 8897, 2010 WL 7113583, at *11-12 (S.D.N.Y. Dec. 17, 2010) (petitioner's claim that he was deprived of his right to an impartial jury was unexhausted and procedurally defaulted because he did not raise the claim on direct appeal, and no further direct appeal is permitted in New York) (Report-Rec.), *adopted*, 2011 WL 3251576 (S.D.N.Y. Jul 28, 2011).[34]

In any event, petitioner's substantive challenge to the jury selection is clearly without merit. As noted above, the state judge, who denied the claim in the Section 440.10 motion that trial counsel was ineffective for failing to challenge juror Tobrocke, made the following factual findings: (1) Tobrocke had acknowledged in the juror questionnaire that he or someone close to him had been convicted of a crime; (2) petitioner failed to establish that any of Tobrocke's answers during voir dire were false; (3) Tobrocke's answers regarding his ability to be impartial were unequivocal; and (4) petitioner failed to establish that he had a valid challenge for cause. (11/17/2011 Dec. & Order at 3-4). These findings of fact are entitled to a "presumption of correctness," and petitioner has failed to rebut them with "clear and convincing" evidence. 28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. at 338-39.

## VI. <u>Allegedly Harsh and Excessive Sentence</u>

Petitioner claims, as he did on direct appeal (Ex. A at 42-45), that his sentence was harsh and excessive. (Pet., Dkt. No. 1 at 10). The Second Circuit has consistently held that "[n]o federal constitutional issue is presented where . . . the

---

[34] *See also Louis v. Fischer*, 2007 WL 4198255, at *21; *Brown v. Perlman*, 2008 WL 2009220, at *28-29 and other cases cited in note 7, above.

sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). *See also Bellavia v. Fogg,* 613 F.2d 369, 373-74, n.7 (2d Cir. 1979) (sentencing is properly the province of the state legislature, and long mandatory sentence imposed pursuant to statute did not constitute cruel and unusual punishment)*; Ewing v. California*, 538 U.S. 11, 25 (2003).

Petitioner does not claim that his sentence, after the reduction in the term of post-release supervision ordered by the Appellate Division, exceeded the maximum permitted by New York law.[35]  Given the legality of petitioner's sentence under state law, he states no cognizable constitutional habeas claim.

## VII.  **Alleged Failure to Notify Petitioner of Rights Related to Grand Jury**

Petitioner claims, as he did in his motion to amend his Section 440.10 motion (Ex. Q) and in a post-trial motion to dismiss the indictment (Ex. R, Dkt. No. 14-26), that neither the People, nor his trial counsel, notified him of his right to testify in the grand jury.  (Pet., Dkt. No. 1 at 12).  The due process claim asserted in the petition is not cognizable under 28 U.S.C. § 2254 "because a defendant's right to testify before the grand jury is not a federal constitutional right; rather, it is a statutorily created right in New York." *Lucius v. Filion*, 431 F. Supp. 2d 343, 346 (W.D.N.Y. 2006) (citing N.Y. Crim. Proc. Law § 190.50(5)(a)); *Martinez v. Miller*, 9:04-CV-90 (GTS/DEP), 2009 WL 1272069, at *10 (N.D.N.Y. May 5, 2009).  Moreover, petitioner's federal grand jury rights are not cognizable on federal habeas review because any possible

_____

[35] Respondent's Memorandum of Law (at 33-34) correctly explains why petitioner's sentence is the maximum allowed by New York law, based on the charges on which he was convicted that were not dismissed on direct appeal.

defect in the grand jury proceeding was cured by his subsequent conviction. *See, e.g., Klosin v. Conway*, 501 F. Supp. 2d 429, 436-37 (W.D.N.Y. 2007) (citing, *inter alia*, *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (a guilty verdict by a petit jury *a fortiori* forecloses claims concerning irregularities in state grand jury proceeding in a collateral attack brought in a federal court)). Thus, petitioner's claim that he was not provided with proper grand jury notice affords no basis for habeas relief.

In any event, this claim, and the related claim that counsel failed to notify petitioner of his right to file a motion to dismiss the indictment because he was not notified of his right to testify before the grand jury, are also without merit. The state Supreme Court Justice who, following an evidentiary hearing, denied petitioner's Section 440.10 motion, found that petitioner did not establish that trial counsel failed to advise him of his right to testify before the grand jury. (2/10/2012 Dec. & Order at 3-4; HT at 44-45). Petitioner has presented no "clear and convincing" evidence to rebut that factual findings. 28 U.S.C. § 2254(e)(1).

Further, even assuming that petitioner was not given notice of the grand jury presentation, he has not indicated what he would have said to the grand jury that would have prevented his indictment. Thus, petitioner has not demonstrated that the People's alleged failure to provide him with notice of his right to testify caused him any prejudice. *Reeb v. Woods*, 751 F. Supp. 2d 484, 487 (W.D.N.Y. 2010) (citing *Hutchings v. Herbert*, 260 F. Supp. 2d 571, 578 & n.2 (W.D.N.Y. 2003).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

further

RECOMMENDED, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**Dated:** September 5, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge