**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**JASON BEAUHARNOIS,**

                               Petitioner,

                  v.                                        9:12-CV-1283
                                                                (FJS/ATB)

**PAUL CHAPPIUS, Superintendent,**

                               Respondent.

---

**APPEARANCES**                                            **OF COUNSEL**

**JASON BEAUHARNOIS**
**08-A-2369**
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004
Petitioner *pro se*

**OFFICE OF THE NEW YORK**              **PAUL B. LYONS, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenged a 2008 judgment of conviction for Sexual Abuse in the First Degree, *see* N.Y. Penal Law § 130.65(3); Course of Sexual Conduct Against a Child in the First Degree, *see* N.Y. Penal Law § 130.75(1)(b); Predatory Sexual Assault Against a Child, *see* N.Y. Penal Law § 130.96; and Endangering the Welfare of a Child, *see* N.Y. Penal Law § 260.10(1). Petitioner

was sentenced to an aggregate prison term of thirty-two years to life, followed by twenty years of post-release supervision. On June 16, 2009, the Appellate Division, Third Department, unanimously vacated Petitioner's conviction on first degree Course of Sexual Conduct Against a Child and affirmed the judgment of conviction as modified, which reduced Petitioner's term of post-release supervision to ten years. On October 26, 2009, the New York Court of Appeals denied leave to appeal. *See People v. Beauharnois*, 64 A.D.3d 996 (3d Dep't), *lv. denied*, 13 N.Y.3d 834 (2009).

On September 5, 2013, Magistrate Judge Baxter issued a Report-Recommendation and Order in which he recommended that the Court deny and dismiss Petitioner's petition and not issue a Certificate of Appealability in this case. *See* Dkt. No. 24 at 49-50. Both Petitioner and Respondent filed objections to those recommendations. *See* Dkt. Nos. 25, 26.

## II. BACKGROUND

In late May of 2007, just prior to his twelfth birthday, Petitioner's stepson told a fellow student that he did not like Thursdays because, on that day, Petitioner would touch him in a way he disliked. *See* Trial Transcript ("TT") at 693 (Ward).[1] Following this disclosure, the minor victim met, over the course of several days, with Natalie J. Ward, a school social worker; Carrie Carpenter, a Clinton County Department of Social Services ("DSS") caseworker; a police officer; and family pediatrician, Dr. Clark J. Knutson, who also examined the victim. *See* TT at 693-94, 702-03, 705-10 (Ward); 742-59 (Carpenter); 808-823 (Dr. Knutson). The minor victim first told

---

[1] The transcript of Petitioner's March 2008 trial is part of the record at Dkt. Nos. 15-1 and 15-2.

his interviewers that Petitioner had touched his genitals on a few occasions in the past; but he later stated that Petitioner had been anally sodomizing him on a weekly basis for more than a year. *See id.*

In July 2007, Petitioner was arrested on two counts of sexual conduct against a child in the first degree. Attorney Daniel G. Gaudreau was assigned to represent Petitioner in Beekmantown, New York town court. *See* Dkt. No. 14, Exhibit "A," Appellant's Brief, at 7; Hearing Testimony ("HT") at 37.[2] Following unsuccessful plea negotiations with the District Attorney's Office, Petitioner was indicted on December 10, 2007, on the charges set forth above. *See* Dkt. No. 14 at 5, 7-8.

On March 10, 2008, the parties proceeded to trial before Acting Supreme Court Justice Lawliss and a jury. The minor victim, then age twelve, testified for the People. He recounted a detailed history of the sexual abuse he suffered    starting with Petitioner's touching of his genitals, at age seven, and progressing to weekly anal sodomy, which began when the victim was between ten and eleven years old. *See* TT at 512-29, 531-58. Petitioner's counsel's cross-examination reflected his strategy of suggesting that the victim fabricated the claims of abuse because he resented that his stepfather disciplined him and that the victim's testimony was improperly influenced by the authorities who interviewed him. *See id.* at 488-92 (Defense Opening); 571, 576, 587, 588-92 (Victim cross-examination). Petitioner's counsel's questioning focused on the considerable inconsistencies in the victim's trial testimony and his various prior statements. *See id.* at 572-75, 577-86, 607-10. As Petitioner's brief on direct appeal succinctly

---

[2] The transcript of the February 6, 2012 evidentiary hearing relating to Petitioner motion under N.Y. Crim. P. Law § 440.10 is part of the record at Dkt. No. 15.

-3-

summarized, the victim's testimony regarding what he previously had said to the authorities about the alleged abuse was clearly inaccurate in many respects. *See* Dkt. No. 14 at 30-34.

The victim's grandfather, Thomas G. Stuart, also testified for the People about the circumstances under which Petitioner was periodically home alone with his stepson after school. Mr. Stuart also described changes in the victim's behavior and demeanor during the period of time he was allegedly being sodomized, including a recurring problem with soiling his pants. *See* TT 631-37, 639-51. School social worker Ward and DSS caseworker Carpenter testified about their interviews of the victim regarding the alleged abuse, and Petitioner's counsel cross-examined them extensively about inconsistencies in the victim's prior statements and trial testimony. *See id.* at 693-94, 702-11 (Ward direct examination); 726-32 (Ward cross-examination); 745-59 (Carpenter direct examination); 768-87 (Carpenter cross-examination).

Dr. Knutson testified for the People about his interview and examination of the victim and provided an expert opinion that damage to the victim's anus was caused by involuntary anal intercourse. *See id.* at 808-25.

Petitioner called two witnesses — Petitioner's mother and the victim's mother, who was also Petitioner's wife. *See id.* at 878-895. The victim's mother testified that she never suspected Petitioner of abuse and that she could not recall a time when he would have been home alone with her son or in her son's bedroom. *See id.* at 908, 910-11, 919-20. Both defense witnesses testified that the victim had a long history of chronic constipation and fecal soiling of his pants, which Petitioner's counsel offered to rebut Dr. Knutson's opinion that the victim's anus had been damaged by penile penetration. *See id.* at 1026-28, 1032-33, 1036-37. Although Petitioner initially intended to testify, he did not do so. *See id.* at 493, 996-97.

After judgment was entered, Petitioner, with the assistance of new counsel, filed a direct appeal, *see* Dkt. No. 14, Exhibit "A," which resulted in the dismissal of one charge and a reduction in the term of his post-release supervision.

On December 21, 2010, Petitioner filed a *pro se* application for a writ of error *coram nobis* in the Appellate Division, arguing that his appellate counsel's representation was deficient because he did not argue that his trial counsel was ineffective for failing to consult with an independent medical expert to counter Dr. Knutson's testimony. *See* Dkt. No. 14-11, Exhibit "G." On January 28, 2011, the Appellate Division summarily denied Petitioner's motion. *See* Dkt. No. 14-17, Exhibit "J." On July 12, 2011, the Court of Appeals denied leave to appeal. *See* Dkt. No. 14-22, Exhibit "N."

On July 15, 2011, Petitioner moved *pro se* to vacate the judgment of conviction under New York Criminal Procedure Law § 440.10, claiming that his trial counsel's representation was constitutionally deficient in a number of specified ways. *See* Dkt. No. 14-23, Exhibit "O." Petitioner was allowed to amend his motion to add several other specifications of alleged ineffective assistance of trial counsel. *See* Dkt. No. 14-25, Exhibit "Q"; Dkt. No. 14-31, Exhibit "W." The trial judge conducted an evidentiary hearing at which Petitioner, represented by a new attorney, and Petitioner's former trial counsel both testified. *See* Dkt. No. 15. The state court ultimately found that Petitioner failed to sustain any of his claims of ineffective assistance. *See* Dkt. No. 14-32, Exhibit "X"; Dkt. No. 14-33, Exhibit "Y." On July 16, 2012, the Appellate Division denied Petitioner leave to appeal the trial court's denial of his § 440.10 motion. *See* Dkt. No. 14-4, Exhibit "CC." Petitioner also filed a motion to renew his § 440.10 motion. *See* Dkt. No. 14-6, Exhibit "DD," which the court denied on June 4, 2012, *see* Dkt. No. 14-10,

Exhibit "FF." The Appellate Division denied Petitioner leave to appeal the trial court's denial of his renewal motion on September 4, 2012. *See* Dkt. No. 14-16, Exhibit "II."

In his *pro se* habeas petition dated August 3, 2012, Petitioner raised five grounds for relief: (1) his trial attorney provided ineffective assistance, in various specified ways, in connection with the plea bargaining process and at trial; (2) appellate counsel's representation was deficient because he did not argue, on direct appeal, that trial counsel was ineffective in confronting the expert testimony of Dr. Knutson; (3) the jury was improperly selected because it included a juror who concealed his criminal history, touted his experience as a former police officer, and failed to state unequivocally that he would be impartial; (4) the sentence was harsh and excessive; and (5) Petitioner was never notified of his right to testify before the grand jury or move to dismiss the indictment based on the violation of his grand jury rights.

In a very thorough Report-Recommendation and Order, dated September 5, 2013, Magistrate Judge Baxter concluded that none of Petitioner's grounds for relief had merit; and, therefore, he recommended that this Court deny and dismiss the petition.

Petitioner filed objections to Magistrate Judge Baxter's recommendations on the following grounds: (1) the majority of Magistrate Judge Baxter's conclusions were prejudicial in nature and driven by his discriminatory opinion due to the nature of Petitioner's crime; (2) Magistrate Judge Baxter failed to apply the two prongs of the *Strickland* test, instead relying on state precedents in the form of preponderance of the evidence; (3) Magistrate Judge Baxter's conclusion that Petitioner made a tactical decision to omit certain claims of ineffective assistance or to recast them as due process claims is prejudicial, biased and purely speculative; (4) Magistrate Judge Baxter failed to consider the evidence supporting Petitioner's claims that the

Attorney General excluded in its submissions; and (5) Magistrate Judge Baxter only considered matters that supported Respondent's position with regard to Petitioner's claim that his trial attorney did not communicate formal plea offers to him. *See* Dkt. No. 26 at 1-3. In addition, Petitioner asserted that he could not get any consideration or reasonable view of the evidence to support his claims because of the nature of his crime. *See id.* at 3-4. Finally, Petitioner stated that, in his objections, he could not make specific reference to documents and evidence because he did not have his legal work with him at that time. *See id.* at 4.

Respondent also filed objections to Magistrate Judge Baxter's recommendations, arguing that Magistrate Judge Baxter had improperly relied on Second Circuit authority in contravention of the Supreme Court's statement in *Renico v. Lett*, 559 U.S. 776, 779 (2010), that in the AEDPA context, district courts should not use circuit court decisions to augment Supreme Court precedent. *See* Dkt. No. 25 at 1-2. Nonetheless, Respondent asserted that, because Magistrate Judge Baxter had distinguished the Second Circuit cases from this case, the Court should not alter his recommendations. *See id.* at 5.

### III. DISCUSSION

**A.     District court's review of a magistrate judge's recommendations**

A district court reviews a magistrate judge's recommendations *de novo* as to those parts of the report-recommendation to which a party specifically objects. *See* 28 U.S.C. § 636(b)(1)(C). On the other hand, a court reviews those parts of the report-recommendation to which the parties do not object or to which they offer "'only frivolous, conclusive or general objections'" for clear error. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 281 F. Supp. 2d

436, 439 (N.D.N.Y. 2003) (quotation and other citation omitted).

Petitioner's only specific objection relates to the issue of whether his trial counsel provided effective assistance during the plea bargaining process. Therefore, the Court will engage in a *de novo* review of the record regarding this issue. Petitioner's other objections are frivolous, conclusory or general in nature. Therefore, the Court will review the record for clear error with respect to the issues raised in those objections.

**B.  Federal court's review of state courts' decisions under the AEDPA**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based on the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398, 1400 (2011); *Premo v. Moore*, 562 U.S. 115, 121 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "'highly deferential'" and "'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, ___, 131 S. Ct. 1305, 1307 (2011) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. ___, ___, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, ___ U.S. ___, 133 S. Ct. 1990, 1992 (2013) (*per curiam*) (quoting *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)); *see also Metrish v. Lancaster*, ___ U.S. ___, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'" (quoting *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011))).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, ___ U.S. ___, 132 S. Ct. 2148, 2149 (2012) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. ___, ___, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable   a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citation omitted). Finally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Id.* at 473-74 (quoting § 2254(e)(1)).

*1. Petitioner's ineffective-assistance-of-of-counsel claim*

In his objections, Petitioner objects to Magistrate Judge Baxter's conclusions with respect to his claim that his trial counsel was ineffective for not properly advising him during the plea negotiation process.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that his counsel's performance fell below an objective standard of professional reasonableness; and, but for counsel's alleged errors, the result of the proceedings would have been different and, as a result, the petitioner suffered prejudice. *See Premo*, 562 U.S. at 121 (quotation omitted); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel*, 350 U.S., at 101, 76 S. Ct., at 164). Even if a petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *See id.* at 693-94.

Meeting this burden is "'"never an easy task"' . . . [and] 'establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.' . . ." *Premo*, 562 U.S. at 122 (internal quotations omitted). When reviewing a state court's decision under section 2254, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable   a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen

§ 2254(d) applies, the question is not whether counsel's actions were reasonable." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Instead, "the question is whether there is any reasonable argument that counsel satisfied *Strickland'*s deferential standard." *Id.*

Finally, the Supreme Court has recently affirmed that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected. *See Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1407-08 (2012). The Supreme Court declined specifically to define and enumerate the Sixth Amendment obligations of defense counsel in this context, but held that, "as a general rule, counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 1408. The Court in *Frye* further held that,

> [t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.

*Id.* at 1409.

In his habeas petition, Petitioner claims that his trial counsel failed to advise him properly during plea negotiations by failing to inform him of his maximum sentencing exposure if he went to trial and by not providing "any advice whatsoever" to assist him in deciding whether to accept or reject plea offers. "As a result the petitioner received a sentence fifteen (15) times more than the District Attorney's [first] Plea Offer." *See* Dkt. No. 1, Petition, at 6.

As Magistrate Judge Baxter noted, after an evidentiary hearing at which both Petitioner

-11-

and his trial counsel testified, the Acting Supreme Court Justice denied similar claims in Petitioner's § 440.10 motion. The state court found that Petitioner's counsel was "at least as credible" as Petitioner and made the factual determination that Petitioner had "failed to prove by a preponderance of the evidence that his trial counsel failed to convey to him all plea offers made by the People, failed to give him advice regarding plea offers, [and] failed to disclose to him that he was facing possible life prison. . . ." *See* Dkt. No. 14-33, Exhibit "Y," February 10, 2012 Decision and Order at 1-2, 3-4.

During the evidentiary hearing conducted in connection with Petitioner's § 440.10 motion, Petitioner's counsel testified that, during an early appearance in town court, he had discussed with Petitioner the particulars of the District Attorney's first plea offer, involving a two-year prison sentence. Counsel also explained "how accepting a plea offer might be better than going to trial because if you lost at trial you could be maxed out on the charges and you would receive a much greater sentence." *See* HT at 37-39, 75-76. Petitioner rejected the offer "fairly quickly" and made a counteroffer, to serve one year in county jail, which the District Attorney rejected. *See id.* at 39, 75, 77. Counsel arranged for the originally-assigned Assistant District Attorney to keep the two-year offer open for several months thereafter; but when a new Assistant District Attorney took over the case, she modified the plea offer, which then called for a ten-year prison sentence. *See id.* at 39-41, 56. Counsel discussed the revised offer with Petitioner, who was dissatisfied with, and not amenable to accepting, it. *See id.* at 42-43, 57.

During the evidentiary hearing, Petitioner acknowledged that his counsel had advised him of the original two-year plea offer by telephone, but Petitioner denied rejecting that offer in town court in August 2007, even when confronted with minutes of the court proceeding indicating that

Petitioner found the plea offer unacceptable. *See id.* at 8, 23-26. Petitioner also admitted that, on one occasion prior to trial, his counsel had advised him that he was facing a sentence of 15 to 25 years to life on the pending charges. *See id.* at 13-14. Petitioner otherwise denied that his counsel communicated or provided any information or advice with respect to the plea offers from the District Attorney. In fact, Petitioner claimed that his trial counsel did not represent him between the time of the first plea offer and his arraignment, months later, during which time that attorney was clearly engaging in ongoing plea negotiations with the District Attorney's Office. *See id.* at 9-11, 13-15.

In a motion to renew his § 440.10 motion, Petitioner proffered evidence that his counsel never submitted a voucher to the state court for payment of his fees for representing Petitioner, as he claimed at the prior hearing. Petitioner also submitted an affidavit from a prisoner who presented information, admittedly not first-hand, that Petitioner's counsel had an intimate relationship with the Assistant District Attorney who tried Petitioner's criminal case. *See* Dkt. No. 14-6, Exhibit "DD," at 2, 5-7, 14-15. The state court denied the motion to renew, finding, among other things, that the prisoner's affidavit contained triple hearsay and had no probative value. The state court also found that, given Petitioner's counsel's equivocal testimony about his request for payment for his representation of Petitioner at the prior hearing, the fact that a reimbursement voucher was never submitted "would not significantly impact the Court's determination regarding [Petitioner's counsel's] credibility." *See* Dkt. No. 14-10, Ex. "FF," Decision and Order dated June 4, 2012, at 2.

After reviewing this record, Magistrate Judge Baxter concluded that, "[u]nder the extremely narrow scope of review of factual findings of a state court under Section 2254(e)," he

would not disturb the state court's determination that Petitioner's counsel's testimony about his advice during plea negotiations was at least as credible as Petitioner's. *See* Dkt. No. 24 at 21. He concluded that "the finding that [P]etitioner failed to prove by a preponderance of the evidence that his trial counsel neglected to convey to him the plea offers, failed to give [P]etitioner advice about those plea offers, and did not discuss his sentencing exposure if he rejected those offers, was not an 'unreasonable determination of the facts in light of the evidence presented.'" *See id.* (quoting *Mtichell v. Rock*, 11-CV-2642, 2013 WL 4041545, at *14-5, 20 n.14 (E.D.N.Y. Aug. 9, 2013) (deferring, under 28 U.S.C. § 2254(e), to the factual/credibility findings of the stae court regarding the advice provided by defense counsel to petitioner regarding plea bargaining)) (citing *Green v. Portuondo*, 02-CV-4198, 03-MISC-66, 2003 WL 23199872, *14-16 (E.D.N.Y. Oct. 27, 2003) (the trial court found defendant's claims that counsel supposedly failed to advise him of his "exposure" if convicted after trial was "incredible"; for purposes of federal habeas review, the lower court's factual findings are presumed to be correct in the absence of clear and convincing rebuttal evidence)).

Finally, Magistrate Judge Baxter concluded that, because Petitioner had failed to rebut, with "clear and convincing evidence," the state court's factual/credibility determination that Petitioner had not overcome the testimony of Petitioner's counsel that he had advised Petitioner about the merits of the District Attorney's plea offers and Petitioner's potential exposure if he went to trial, the state court did not unreasonably apply the law of the Supreme Court in concluding that Petitioner's trial counsel did not provide ineffective assistance in connection with the plea bargaining process. *See id.* at 22-23 (citing *Lake v. U.S.*, 465 F. App'x 33, 35 (2d Cir. 2012) (although petitioner plausibly alleges that he relied to his detriment on defense counsel's

-14-

advice that he reject a plea offer, he fails to allege any actionable professional lapse on counsel's part, such as a legal error or a complete failure to render advice; counsel's miscalculations regarding the Government's willingness to negotiate a more favorable deal or restore its initial plea offer represent, at best, strategic errors that are "virtually unchallengeable" under *Strickland*); *Purdy v. U.S.*, 208 F.3d at 45-46 (despite his decision to forgo explicitly telling his client whether he should accept a plea offer, defense counsel "successfully steered a course between the Scylla of inadequate advice and the Charybdis of coercing a plea" and provided advice "within the range of professional reasonableness")) (footnote omitted).

The Court has reviewed the record in its entirety and agrees with Magistrate Judge Baxter's conclusions. As noted, the AEDPA forecloses a federal court from second guessing the reasonable decision of the state courts. *See Parker*, 132 S. Ct. at 2149 (quotation omitted). Moreover, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). Petitioner has not demonstrated by clear and convincing evidence that the state court's credibility determination, after a hearing, that Petitioner's counsel's testimony was at least as credible as Petitioner's was unreasonable. Moreover, based on that credibility determination and the evidence adduced at the hearing, it was not an unreasonable application of *Strickland* for the state court to conclude that Petitioner's counsel had provided him with effective assistance of counsel during the plea negotiation process.

Accordingly, the Court accepts Magistrate Judge Baxter's recommendation and denies and dismisses Petitioner's habeas petition on the ground that his trial counsel provided ineffective assistance during the plea negotiation process.

### *2. Petitioner's other objections*

As noted, Petitioner's other objections to Magistrate Judge Baxter's Report-Recommendation and Order were frivolous, conclusory or general in nature. Therefore, the Court has reviewed Magistrate Judge Baxter's other recommendations for clear error and manifest injustice and, finding none, the Court accepts Magistrate Judge Baxter's remaining recommendations for the reasons stated in his Report-Recommendation and Order.

### C.     **Respondent's objections**

Although Respondent filed objections to Magistrate Judge Baxter's recommendations, he was actually objecting to Magistrate Judge Baxter's discussion of Second Circuit cases in addition to Supreme Court precedent regarding some of the issues that Petitioner raised in his petition. As Respondent acknowledges, however, this discussion does not alter the recommendations in any substantive manner. Therefore, the Court concludes that there is no need to discuss the issues that Respondent raises.

### IV. CONCLUSION

Having reviewed the entire file in this matter, Magistrate Judge Baxter's September 5, 2013 Report-Recommendation and Order, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Baxter's September 5, 2013 Report-Recommendation and Order is **ACCEPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Petitioner's petition for habeas corpus pursuant to 28 U.S.C. § 2254 is

**DENIED and DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall issue in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2);[3] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 2, 2015
       Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                        Senior United States District Court Judge

---

[3] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (holding that "§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right'").